UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RHONDA DRAKEFORD, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CAPITAL BENEFIT, INC., et al., <br><br> Defendants. | Case No. 20-cv-04161-WHO <br><br> **ORDER GRANTING TEMPORARAY RESTRAINING ORDER** <br><br> Re: Dkt. No. 8 |

Having considered plaintiffs' motion for a temporary restraining order (TRO) to prevent defendants from proceeding with a non-judicial foreclosure on their residence set for July 2, 2020 (Dkt. No. 8) and defendants' opposition (Dkt. No. 13), as well as the supporting declarations and exhibits, plaintiffs' motion is GRANTED.[1]

The main, and for purposes of this TRO, only dispute between the parties is whether the loan provided by defendants, secured by plaintiffs' residence, was made primarily for "business purposes." If it was, the loan is exempt from the protections provided for consumers under the federal Truth in Lending Act (TILA) and the foreclosure may procced. If it was not made primarily for business purposes, then the loan is arguably subject to rescission under TILA, was made in violation of federal and California consumer protection provisions, and the foreclosure should be enjoined. *See* Complaint (Dkt. No. 1-1, attached to the Notice of Removal).

"The Truth-in-Lending Act specifically exempts from its scope extensions of credit for

---

[1] The standards for a TRO are the same as those for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc*., 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff must demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm that would result if an injunction were not issued, (3) the balance of equities tips in favor of the plaintiff, and (4) an injunction is in the public interest. *See Winter v. Natural Res. Defense Council, Inc*., 555 U.S. 7, 20 (2008). The irreparable injury must be both likely and immediate. *See id*. at 22.

business or commercial purposes." *Poe v. First Nat. Bank of DeKalb County*, 597 F.2d 895, 896 (5th Cir., 1979), *citing* 15 U.S.C. 1603(1) and 12 C.F.R. 226.3(a). "Whether an investment loan is for a personal or a business purpose requires a case by case analysis." *Thorns v. Sundance Properties*, 726 F.2d 1417, 1419 (9th Cir.1984). That analysis considers a number of factors, only one of which is the disclosed intent of the borrower.[2]

In support of the TRO plaintiffs declare (consistent with the allegations in their Complaint) that the loan documents "were presented for our signatures with minimal explanation," the notary "said that the lender prohibited her from providing us copies or allowing us to make copies of most of them," and that plaintiffs "never told anyone that the loan was for a 'business purpose' or the like" and the "primary purpose of the loan was to pay off our prior second mortgage." *See* Declaration of Plaintiffs Reginald and Rhonda Drakeford, ¶¶ 4,5, 7 (Dkt. No. 8-1).

Plaintiffs admit they signed at least two documents regarding their intent to use the loan's proceeds, after payoff of their prior second mortgage, as follows. First, in the "Declaration of Loan Purpose" the Drakefords disclosed they intended to use the loan proceeds for, first, "home improvement major landscaping" and, second, "rental improvement." Dkt. No. 8-4. The Drakefords also signed a "Certificate of Business Purpose Loan" form where they wrote that the purpose of the proceeds on the loan were first for "home + rental improvements" and second to "pay down credit cards." *Id*.[3]

Defendants contend that the loan was indisputably a business purpose loan that TILA does

---

[2] In *Thorns*, the Ninth Circuit relied on "Regulation Z," 12 C.F.R. § 226 Supp.1, § 226.3(a)(2)(1983) and identified five factors to determine whether a loan is covered by TILA, specifically: "[1] The relationship of the borrower's primary occupation to the acquisition. The more closely related, the more likely it is to be business purpose. [2] The degree to which the borrower will personally manage the acquisition. The more personal involvement there is, the more likely it is to be business purpose. [3] The ratio of income from the acquisition to the total income of the borrower. The higher the ratio, the more likely it is to be business purpose. [4] The size of the transaction. The larger the transaction, the more likely it is to be business purpose. [5] The borrower's statement of purpose for the loan." *Thorns*, 726 F.2d at 1419; *see also Daniels v. SCME Mortg. Bankers, Inc*., 680 F. Supp. 2d 1126, 1129 (C.D. Cal. 2010).

[3] Plaintiffs declare that the actual use of the loan proceeds was: "about $126,000 on home improvements, furnishings, and the like; at least $13,000 to pay down our prior credit card debt, which we incurred for typical consumer purposes; and $11,650 to put a new roof on our rental property, which is our former home. The remaining proceeds went to general consumer living expenses and reserves." Declaration of Plaintiffs Reginald and Rhonda Drakeford, ¶ 7.

1    not regulate.  Defendants contend, first, that they specialize in placing and funding business

2    purpose loans that are exempt from TILA.  *See* Declaration of Marcel Breutsch (Dkt. No. 16) ¶ 8.

3    Defendants also dispute plaintiffs' professed ignorance of the alleged business purpose of the loan

4    by noting that plaintiffs' Uniform Residential Loan Application, signed by the Drakefords,

5    disclosed the purpose of their "refinance" as "business capital."  *Id*., Ex. 6.  Defendants also point

6    to the Drakefords' signing the "Certificate of Business Purpose Loan" which Rhonda Drakeford –

7    as a licensed real estate broker – should have known signified the "business purpose" of the loan.

8    *Id*., Ex. 7.

9    Considering the record before the Court on the TRO, plaintiffs have shown a likelihood of

10   success on the merits of at least their TILA claim because there is significant evidence that the

11   *disclosed* primary purpose of the loan both at the time it was sought and at the time of its

12   origination was for non-business uses.  Assuming the truth of the allegations in plaintiffs'

13   Complaint and the assertions in their declaration in support of the TRO, there is support for

14   plaintiffs' position that they did not inform the mortgage broker who sourced the loan they

15   intended the loan for business purposes, that they did not have an adequate opportunity to review

16   the loan disclosure forms before signing them, that they truthfully disclosed on "Declaration of

17   Loan Purpose" and the "Certificate of Business Purpose Loan" forms their intent to use the

18   proceeds of the loan (after their existing second mortgage was paid off) first for improvements to

19   their home and second for rental improvements.  These assertions may be undercut – at the

20   preliminary injunction stage or on summary judgment – by evidence regarding who filled out

21   plaintiffs' Uniform Residential Loan Application (disclosing the purpose of the refinance was

22   "business capital") as well as evidence or argument that Rhona Drakeford, as a licensed real estate

23   broker, should be bound by having signed a "Certificate of Business Purpose Loan" form, despite

24   *also* contemporaneously signing a "Declaration of Loan Purpose" form and disclosing the intent to

25   use the loan proceeds first for non-business uses ("home improvements" and paying off credit

26   cards) and secondarily for the disclosed business uses ("rental improvements").

27   Turning to the other relevant factors to be considered before granting a TRO, irreparable

28   harm tips sharply in the favor of plaintiffs.  *Lewis v. U.S. Bank Natl. Assn*., 16-CV-05490-JSW,

2016 WL 5662030, at *4 (N.D. Cal. Sept. 28, 2016) ("the loss of a residence through foreclosure presents an irreparable injury"). The balance of equities also tips sharply in plaintiffs' favor as there appears to be sufficient equity in plaintiffs' residence to secure defendants' interest. Plaintiffs estimate they have "at least $1 million in equity in the property exclusive of defendants' interest." *See* Declaration of Plaintiffs Reginald and Rhonda Drakeford, ¶ 3. Defendants object to this estimate, *see* Dkt. No. 14 at 2-3 (Evidentiary Objections), but they do not offer any evidence in response to show that their interests are not adequately protected by the existing equity in the residence. Because it appears that defendants' secured interest will adequately protect them pending final resolution of plaintiffs' claims, I will not require plaintiffs to post a bond at this time. *See, e.g., Lewis v. U.S. Bank Natl. Assn.*, 16-CV-05490-JSW, 2016 WL 5662030, at *4 (N.D. Cal. Sept. 28, 2016) ("Because Defendant has a secured interest in the Property and will be permitted to proceed with foreclosure if the Court determines that Plaintiff does not have meritorious claims, the Court does not require Plaintiff to post a bond at this time.").

Therefore, plaintiffs' request for an entry of a TRO enjoining the scheduled July 2, 2020 foreclosure sale on their residence is GRANTED.

Absent agreement of the parties to a different schedule, plaintiffs shall file their motion for a preliminary injunction to extend the injunctive relief by July 13, 2020. Defendants shall file their opposition to a preliminary injunction by July 27, 2020. Plaintiffs may file a reply by August 3, 2020, and a hearing on the motion for a preliminary injunction shall be held at 2:00 p.m. on August 12, 2020.

**IT IS SO ORDERED.**

Dated: June 30, 2020

_____
Jeffrey S. White as Duty Judge for
William H. Orrick
United States District Judge

4