UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RHONDA DRAKEFORD, et al.,

Plaintiffs,

v.

CAPITAL BENEFIT, INC., et al.,

Defendants.

Case No. 20-cv-04161-WHO

**ORDER ON POST-TRIAL MOTIONS AND JUDGMENT**

Re: Dkt. Nos. 136, 146

Defendants' renewed motion for judgment as a matter of law or, in the alternative for a new trial, is DENIED. The jury had more than sufficient evidence to support their verdict. And in light of that evidence and verdict, plaintiffs' motion for relief under California's Unfair Competition Law ("UCL") is GRANTED.

## BACKGROUND

On March 28, 2022, the jury returned its verdict in this case, concluding that the loan plaintiffs' Rhonda and Reginald Drakeford secured from defendants was primarily for consumer purposes and that it and defendants violated the Federal Truth in Lending Act, the Real Estate Settlement Procedures Act and the Rosenthal Fair Debt Collection Practices Act. Dkt. No. 133. The jury also determined that the Drakefords were not "sophisticated borrowers who took deliberate and calculated steps to mislead defendants into believing the loan at issue was being obtained" for business purposes. *Id*.

The jury also found that defendants Marcel Bruetsch and Capital Benefit, Inc. breached the fiduciary duties that they owed to the Drakefords and that the breach was a substantial factor in causing harm to the Drakefords. *Id*. The jury awarded statutory but not actual damages to the Drakefords on their statutory claims and $13,791.94 in damages for the breach of fiduciary duties. *Id*. The jury found that defendant Bruetsch did not act with malice, fraud, or oppression (as

1   required for punitive damages), but that Bruetsch and Capital Benefit, Inc. acted with unclean

2   hands. *Id.*

3          On the defendants' counterclaim, the jury found that the Drakefords did not make

4   fraudulent misstatements or fraudulently conceal material information but did negligently make

5   misrepresentations to defendants. However, the jury awarded no damages to defendants for those

6   negligent misrepresentations and expressly concluded that the Drakefords did not act with malice,

7   fraud, oppression, or with unclean hands. *Id.*

8          Defendants now move for judgment notwithstanding the verdict, contending that all of the

9   Drakefords' claims are barred by the doctrine of equitable estoppel, that if the Drakefords are

10  entitled to any relief it is only rescission of the loan under TILA, and that the defendants should

11  otherwise be considered the "prevailing parties." Dkt. No. 136. Plaintiffs have also moved for

12  entry of findings of fact and conclusions of law on the California Unfair Competition claim

13  ("UCL," Cal. Bus. & Prof. Code 17200 *et seq.*,), which was tried to the court, as well as entry of

14  their proposed form of judgment. Dkt. No. 146.

15                                         **DISCUSSION**

16  I.      **DEFENDANTS' RENEWED MOTION FOR JUDGMENT AND REQUEST FOR A
            NEW TRIAL**

17
           Defendants move to set aside the jury's verdict, arguing that the Drakefords failed to
18
    introduce sufficient evidence at trial to support their statutory or breach of fiduciary duty claims
19
    and that, regardless, any recovery under those claims is barred by equitable estoppel.
20
           **A.      Legal Standards**
21
           Federal Rule of Civil Procedure ("FRCP") 50 governs judgments as a matter of law
22
    ("JMOL") in jury trials. Under Rule 50(a)(1), "[i]f a party has been fully heard on an issue during
23
    a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary
24
    basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and
25
    (B) grant a motion for judgment as a matter of law against the party on a claim or defense that,
26
    under the controlling law, can be maintained or defeated only with a favorable finding on that
27
    issue." If a party files a motion under Rule 50(a) that the court does not grant, Rule 50(b) provides
28

United States District Court
Northern District of California

that "the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59."  The court may then (1) allow judgment on the verdict, (2) order a new trial, or (3) enter judgment as a matter of law.  Fed. R. Civ. P. 50(b)(1)–(3).

A motion for JMOL can only be granted if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party" against whom the motion is brought.  Fed. R. Civ. P. 50(a).  In other words, to grant the motion, "under the governing law, there can be but one reasonable conclusion as to the verdict."  *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)) (internal quotation marks omitted).  The court must "construe the facts in the light most favorable to the jury's verdict."  *Id.* (internal quotation marks and citations omitted).  "A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion."  *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002).  When examining the record, "the court must not weigh the evidence, but should simply ask whether the plaintiff has presented sufficient evidence to support the jury's conclusion."  *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008).  Consequently, the court "is not to make credibility determinations" and "must accept the jury's credibility findings consistent with the verdict.  It must disregard all evidence favorable to the moving party that the jury is not required to believe."  *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001) (internal quotation marks and citations omitted).

FRCP 59 governs motions for a new trial.  A court may grant a new trial "on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1).  "The authority to grant a new trial . . . is confided almost entirely to the exercise of discretion on the part of the trial court."  *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980).  "[E]ven if substantial evidence supports the jury's verdict, a trial court may grant a new trial if the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the

1   trial court, a miscarriage of justice." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251

2   F.3d 814, 819 (9th Cir. 2001) (internal quotation marks and citation omitted).  Likewise, a new

3   trial is warranted when "it is quite clear that the jury has reached a seriously erroneous result."

4   *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1093 (9th Cir. 2014).  But the court "may not grant a

5   new trial simply because it would have arrived at a different verdict."  *Silver Sage*, 251 F.3d at

6   819.

7   　　　　**B.　　Equitable Estoppel**

8   　　　　Initially, defendants argue that all of plaintiffs' "claims" are barred by the doctrine of

9   equitable estoppel because the evidence at trial established that the Drakefords knew they were

10  "<u>applying</u> for a loan that was allegedly not for a business purpose" and given their prior

11  experiences with foreclosure and other loans, they knew defendants' would rely on their

12  representations in issuing that defendants thought was a business purpose loan.

13  Defendants/Counterclaimants' Renewed Mot. for J. and Req. for New Trial ("Defs. Mot.") at 3-5

14  (emphasis in original).  This contention is not persuasive.

15  　　　　"The required elements for an equitable estoppel are: (1) the party to be estopped must be

16  apprised of the facts; (2) the party to be estopped must intend his or her conduct shall be acted

17  upon, or must so act that the party asserting the estoppel had a right to believe it was so intended;

18  (3) the other party must be ignorant of the true state of facts; and (4) the other party must rely upon

19  the conduct to his or her injury." *Munoz v. State of California*, 33 Cal.App.4th 1767, 1785 (1995).

20  "The doctrine of equitable estoppel, also known as promissory estoppel, 'is founded on concepts

21  of equity and fair dealing.  It provides that a person may not deny the existence of a state of facts if

22  he intentionally led another to believe a particular circumstance to be true and to rely upon such

23  belief to his detriment.'" *San Francisco Bay Area Rapid Transit Dist. v. Gen. Reinsurance Corp.*,

24  111 F. Supp. 3d 1055, 1070 (N.D. Cal. 2015), aff'd, 726 F. App'x 562 (9th Cir. 2018) (quoting

25  *City of Goleta v. Super. C*t., 40 Cal.4th 270, 279 (2006)).

26  　　　　The evidence and testimony that defendants rely on was all presented to the jury: that the

27  Drakefords had prior experience with foreclosures; that the Drakefords had taken a business

28  purpose loan out once before; and that the Drakefords knew that signing loan documents with

　　United States District Court
　　Northern District of California

4

United States District Court
Northern District of California

1  potentially false information would have consequences.  The jury determined that, at most, the

2  Drakefords were negligent in their actions, not intentionally fraudulent.  The jury also expressly

3  determined that the Drakefords were not sophisticated borrowers who acted to mislead defendants

4  and that they did not act with unclean hands.  Instead, the jury expressly found that defendants

5  Bruetsch and Capital Benefit acted with unclean hands.

6      In light of the express findings of the jury – which, as discussed below, there is sufficient

7  evidence to sustain – there is no basis for me to find that plaintiffs' claims (or damages for those

8  claims) are barred by equitable estoppel.

9      Defendants argue that equitable estoppel should apply because the elements of equitable

10  estoppel are "nearly identical" to the elements of negligent misrepresentation.  *See, e.g., Borman v.*

11  *Brown*, 59 Cal. App. 5th 1048, 1060 (2021) (elements of negligent misrepresentation are: "(1) the

12  misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it

13  to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable

14  reliance on the misrepresentation, and (5) resulting damage," and noting that negligent

15  misrepresentation does not require knowledge of falsity).  They contend that it would be "patently

16  unjust and contrary to public policy to permit the Drakefords to recover despite signing the loan

17  documents under penalty of perjury."  Defs. Mot. at 5.

18      At trial, plaintiffs submitted evidence and argued that the Drakefords did not intend to

19  mislead defendants, that they did not fully review or fully comprehend the portions of the loan

20  documents filled out by others (that indicated a business purpose for the loan), and that the

21  portions of the loan documents they filled out accurately described the purpose of the loan as

22  being for primarily consumer purposes.  The jury clearly believed the Drakefords – rejecting the

23  intentional fraud claim that might have otherwise established knowledge of falsity – and found

24  their conduct was negligent only.  My conclusion that equitable estoppel does not apply is

25  bolstered by the jury's expressly determination that the Drakefords did not act with "unclean

26  hands" in their dealings with defendants.[1]

27  _____

28  [1] Defendants' argument that "the experience and sophistication of Rhonda Drakeford" weighs in
favor of applying equitable estoppel is directly contrary to the jury's express finding that neither

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## C.      Consumer Purpose

Defendants next argue that no reasonable jury could find that plaintiffs introduced sufficient evidence that the loan was taken out primarily for a consumer purpose as required by TILA, RESPA, and the Rosenthal Act.  The unobjected to jury instructions were very clear about what a consumer purpose is and how to determine that purpose.  *See* Jury Instructions, Dkt. No. 128, at 15, 18, 19.  And there was sufficient evidence at trial for a reasonable jury to find that the loan was intended to be secured for and was secured primarily for consumer purposes, including the disclosed use of the proceeds to pay off a prior mortgage on the Drakefords' home, the information the Drakefords wrote on the loan application documents regarding the consumer purpose of the loan, and the documentary evidence and testimony from the Drakefords about what they intended and what they believed the loan proceeds would be used for.

The loan application and loan origination documents do not preclude the jury's reasonable determination that, for TILA and RESPA, the loans were intended for and used for primarily consumer purposes.  Defendants rely on Cal. Fin. Code § 22502, which provides that in determining whether "a loan is a commercial loan, the lender may rely on any written statement of intended purposes signed by the borrower.  The statement may be a separate statement signed by the borrower or may be contained in a loan application or other document signed by the borrower. The lender shall not be required to ascertain that the proceeds of the loan are used in accordance with the statement of intended purposes."  But they provide no caselaw showing that this provision of California Code can trump or otherwise undermine application of federal consumer protection statutes like TILA and RESPA.  And they provide no authority that the same test and consumer protection purposes that determine consumer use under TILA do not apply for the Rosenthal Act.

Finally, defendants make much of the fact that the Drakefords admitted at trial that they mixed their business and personal accounts and made payments for work they identified as funded by the proceeds of the loan for improvements to their residence from both accounts. Defs. Mot. at

---

Rhonda or Reginald Drakeford were "sophisticated borrowers who took deliberate and calculated steps to mislead defendants into believing the loan at issue was being obtained" for business purposes.  Jury Verdict at 3.

11-14. This was a very unconvincing line of argument at trial. That the plaintiffs did not keep their personal and business accounts separate or that they did not perform a forensic accounting matching each deposit of loan proceeds to a payment for carpet, or flooring, or yard work on their home does not mean that the jury was not entitled to accept plaintiffs' ample evidence that the proceeds from the loan were primarily used for consumer purposes.[2]

### D.      Other Grounds for Negligence

Defendants also argue that the Drakefords' conduct was negligent in light of their failure to review or understand the "business purpose loan" representation included in the loan application (that unrebutted testimony established the Drakefords did not fill out), their failure to review or understand the documents in the loan packet (like the Declaration of Oral Disclosure), and their testimony that they only skimmed and signed them without reviewing them in depth when presented by the notary. Defs. Mot. at 8-10. Perhaps. But defendants offer no explanation of how that conduct nullifies the consumer protection claims, which generally impose a duty on the providers of the loan to ascertain and confirm the purpose of loan. *See, e.g.*, Jury Instructions at 16 ("TILA - LENDER DUTY TO DETERMINE IF TILA APPLIES"). Nor do they show how that conduct could nullify or impact the finding by the jury that Marcel Bruetsch and Capital Benefit, Inc. breached their duties to the Drakefords to adequately identify and discuss the material provisions of the loan they were providing.

### E.      TILA/RESCISSION

Defendants argue that the TILA claim fails because the Drakefords failed to put forth evidence that they have a present ability to tender the loan proceeds as required for rescission under TILA. The question of how and when to effectuate rescission is conferred to the court to

---

[2] Defendants' "tracing" cases are wholly inapposite and do not arise in the context of a TILA or other consumer protection claim. *See, e.g., In re McFarland*, 481 B.R. 242, 248, 251 (Bankr. S.D. Ga. 2012) (burden is on debtor to trace exempt funds, to preserve them from creditors); *Nickey Gregory Co., LLC v. AgriCap, LLC*, No. C 10-80297 MISC JSW, 2011 WL 1793328, at *6 (N.D. Cal. May 11, 2011) (recognizing "that in most cases it will be virtually impossible for a [Perishable Agricultural Commodities Act] debtor to trace the origin of the disputed assets"). Defendants' renewed objections to the admission of Trial Exhibits 18 and 19 – the chart the Drakefords prepared and receipts showing how they spent the proceeds from the loan – are DENIED again. Defs. Mot. 14-15. Those exhibits are not irrelevant or unreliable.

United States District Court
Northern District of California

1    determine as an equitable matter.[3]  I will address that below when considering the proposed form

2    of judgment and stipulation of the parties.

3        **F.    RESPA**

4        Defendants contend that the Drakefords failed to show that the defendants engaged in a

5    pattern and practice of unfair collections or that the Drakefords suffered sufficient damage to

6    recover under RESPA.  "To recover statutory damages, Plaintiffs must plead some pattern or

7    practice of noncompliance with RESPA." *Lal v. Am. Home Servicing, Inc*., 680 F. Supp. 2d 1218,

8    1223 (E.D. Cal. 2010); *see also Lawther v. Onewest Bank*, No. C 10-0054 RS, 2010 WL 4936797,

9    at *7 (N.D. Cal. Nov. 30, 2010) (noting cases require a showing of a "standard or routine way of

10   operating" and although "courts routinely refuse to find a pattern or practice where a plaintiff

11   alleges only a single [Qualified Written Request] refusal, others have accepted that as few as three

12   refusals is sufficient" to show pattern and practice); *Soriano v. Countrywide Home Loans, Inc*.,

13   No. 09-CV-02415-LHK, 2011 WL 1362077, at *7 (N.D. Cal. Apr. 11, 2011) (single QRW failure

14   "to respond is insufficient to establish a "pattern or practice of noncompliance").

15       Plaintiffs do not challenge the applicability of pattern or practice or dispute defendants'

16   caselaw.  Instead, they argue that defendants waived this argument by not raising it as a ground in

17   their Rule 50(a) motion, and that objecting to the RESPA "pattern and practice" instruction or to

18   the special verdict question regarding "pattern and practice" under RESPA as unnecessary in light

19   of the evidence.  Dkt. Nos. 127, 128 at 37, 133 at 10.  As such, the "plain error" standard applies

20   instead of the "substantial evidence" standard.  *See E.E.O.C. v. Go Daddy Software, Inc*., 581 F.3d

21   951, 961–62 (9th Cir. 2009) ("in ruling on a Rule 50(b) motion based on grounds not previously

22   asserted in a Rule 50(a) motion, 'we are limited to reviewing the jury's verdict for plain error and

23   should reverse only if such plain error would result in a manifest miscarriage of justice' . . . .

24   'This exception ... permits only extraordinarily deferential review that is limited to whether there

25   was any evidence to support the jury's verdict.'" (quoting *Janes v. Wal–Mart Stores, Inc*., 279

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [3]  Pre-trial the parties stipulated that the loan was subject to rescission if the jury determined it was
28   secured primarily for consumer purposes, and the parties also stipulated as to the tender amount.
     Dkt. No. 53 at 7-8.

United States District Court
Northern District of California

F.3d 883, 888 (9th Cir. 2002)).

No matter which standard applies, plaintiffs point to substantial evidence supporting the jury's finding that Bruetsch and Capital Benefit engaged in a pattern or practice of non-compliance with RESPA. This includes:

- Bruetsch and Capital Benefit foreclosed on loans that were less than 120 days delinquent. *See* Dkt. No. 133 (Verdict), p. 10; Dkt. No 128 (Jury Instructions), p. 37.

- Bruetsch testified that he initiated foreclosure against plaintiffs precisely "because they were two months behind in their payments." 2 RT 336.

- He testified to a practice of conducting such foreclosures, having completed 15 in the prior five years. *See* 2 RT 337-338.

- Bruetsch and Capital Benefit deemed all the loans they issued as exempt as "business purpose loans" without undertaking any inquiry other than relying on standardized forms that. *See* 4 RT 769; Dkt. No. 128 ("It is the lender's duty to determine in each case if a loan is covered by TILA or not").

- Bruetsch testified that he routinely relied on the preprinted statements on his loan documents—the Certificate of Business Purpose of Loan form (Trial Exhibit 6) in particular—to confirm that the loans he issued were business purpose loans. *See* 2 RT 332-33; 4 RT 763-764.

- Based on the standardized nature of the form itself, the jury could reasonably infer "a pattern or practice" of using that form as a device to circumvent consumer protection laws like RESPA.

- Hibert, an expert on hard money brokerage and lending, testified that Bruetsch and Capital's process failed to meet the standard necessary to establish their loans as exempt from TILA and RESPA as business purposes loans. *See* 2 RT 371-379. He testified that the Certificate of Business Purposes of Loan (Trial Exhibit 6) form, in particular, seemed designed to indicate "that it's an exempt loan, without going to the steps to ensure that it really is." 2 RT 388. To "claim now that it's business purpose because the top of the document says it or whatever is really just, in my opinion, trickery," where other

9

information indicated a consumer purpose and no further follow up was undertaken.  2 RT 392-394.  A "reasonable mortgage broker who's been through this process knows that most borrowers don't read the fine print, let alone understand it."  2 RT 394-395.

- His conclusion is supported by the evidence surrounding Bruetsch's use of "finders" (like Mayer) to procure borrowers (like the plaintiffs).

- Bruetsch testified to engaging in a uniform "process" in underwriting more than a thousand business purpose loans in recent years.  *See* 4 RT 769, 772-773, 791.  The evidence showed that this process routinely includes engaging unlicensed "finders" like Mayer, including relying on them as the "primary" contact with the borrower, including to determine the purpose of the loan.  *See* 2 RT 316-317, 4 RT 749, 774-775.  Mayer testified that he has known Bruetsch for many years and referred about 10 loans to him, understanding that he could only get paid for referrals of so-called business purpose loans. *See* 4 RT 676, 686, 690.

- As Hibert explained, "an unlicensed person cannot be responsible for investigating a purpose of a loan."  2 RT 380-381.  "[I]t's not reasonable to rely on an unlicensed third party to do this type of due diligence and precision.  That's why there's licensing requirements.  And that's why a finder is not permitted to do this type of work for a licensed lender." *Id.*

- Defendants' own hard money brokerage and lending expert, Mr. Doss, agreed.  *See* 4 RT 843-844 (testifying finder's roles should be limited to initial contact and then monitoring to make sure loan goes through).

From this evidence, the jury could reasonably infer that Bruetsch's use of finders as intermediaries for his "business purpose loans" constituted a "pattern or practice" of circumventing consumer protection laws like RESPA.[4]

---

[4] In the opening paragraphs of their motion, defendants assert that judgment in their favor or a new trial is required "on the Drakefords' fourth claim for violation of the Rosenthal Fair Debt Collections Practices Act because the Drakefords have not put forth sufficient evidence to establish that the Broker Defendants or Creditor Defendants engaged in a pattern and practice of unfair or unconscionable means to collect or attempt to collect on the debt, and because the Broker Defendants' affirmative defense of estoppel is a complete bar to recovery," Dkt. No. 136 at 2.  But

United States District Court
Northern District of California

United States District Court
Northern District of California

### G.    Breach of Fiduciary Duty

Defendants contend that plaintiffs did not put forth sufficient evidence that Bruetsch or Capital Benefit breached their fiduciary duty or that they suffered damage due to the alleged breach of fiduciary duties.  There was substantial evidence that the jury could have relied on to find that these defendants breached their fiduciary duties to plaintiffs, such as by failing to explain the loan terms (including the default interest provisions), to use reasonable care in funding a high interest/high-cost loan, or to provide their duty of undivided loyalty to the Drakefords instead of to Mayer (the "finder").  The jury was entitled to believe the Drakefords and reject Bruetsch's testimony that he actually called Rhonda Drakeford to explain the material terms of the loan prior to funding it.  *See also* 2 RT at 403-406.  That evidence was likewise sufficient to support an award of damages.

### H.    Damages v. Rescission

Defendants argue that if I conclude both that the Drakefords are entitled to rescission under the TILA claim and that the Drakefords adduced sufficient evidence to support their breach of fiduciary duty claim, I should find that the Drakefords are not entitled to the compensatory damages the jury awarded for the breach of fiduciary duty claim.  Since the Drakefords are no longer bound by the rescinded loan agreement and are required to pay back the loan principal as part of the rescission process, the defendants argue that the Drakefords should not be able to retain the compensatory damages awarded of $13,791.94, as that figure expressly represents the amount of the New Loan Charges the broker defendants deducted from the $290,000 loan principal.  *See* Trial Exhibit 13.

Under California law, "deliberately fraudulent or duplicitous conduct by a broker would justify depriving her of a commission for breaching her fiduciary duty of disclosure."  *Roberts v. Lomanto*, 112 Cal. App. 4th 1553, 1570 (2003).  Here, the jury expressly held that Bruetsch and Capital Benefit had unclean hands.  Therefore, the "new loan charges" paid by the Drakefords out of their proceeds of the loans to Bruetsch and Capital Benefit is an adequate basis and adequately

---

the defendants did not thereafter discuss the Rosenthal Act in any substance or present any Rosenthal-act specific arguments in the remainder of their brief.  Therefore, the jury's Rosenthal Act verdict stands and will not be addressed further.

supported amount of damages for the breach of fiduciary duty claim.[5]  Plaintiffs are entitled to *both* the compensatory damages awarded to them under their breach of fiduciary duty claim and the stipulated-to rescission remedy under TILA.

Defendants' renewed motion for judgment and, in the alternative, for a new trial, is DENIED.

## II.     PLAINTIFFS' MOTION FOR UCL RELIEF AND JUDGMENT

### A.     Legal Standard

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Prof. & Bus. Code § 17200.  Each "prong" of the UCL provides a separate and distinct theory of liability.  *Rubio v. Cap. One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quotation marks omitted). The UCL's "coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law."  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

The "unlawful" prong of the UCL "borrows violations of other laws and treats them as independently actionable."  *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837 (2006).  The "unfair prong" requires proving either (1) a practice that "offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and that is "tethered to specific constitutional, statutory or regulatory provisions," *Bardin v. DaimlerChrysler Corp.*, 39 Cal. Rptr. 3d 634, 642, 645 (Ct. App. 2006) (quotations omitted); or (2) that "the utility of the defendant's conduct [is outweighed by] the gravity of the harm to the alleged victim," *Schnall v. Hertz Corp.*, 93 Cal. Rptr. 2d 439, 456 (Ct. App. 2000). The "fraudulent" prong of the UCL "require[s] only a showing that members of the public are likely to be deceived," by defendants' conduct.  *Daugherty*, 144 Cal. App. 4th at 838.

Plaintiffs argue that, as a result of the evidence in the trial and consistent with the jury's

---

[5] Plaintiffs also note that under TILA, all financial charges paid by the consumer to TILA-defendants may be awarded as "enhanced" damages and that the statute contemplated both award of enhanced damages, in addition to actual damages, and statutory damages.  *See* 15 U.S.C. § 1640(a)(4); see also § 1640(a)(1) (actual damages), § 1640(a)(2) (statutory damages).  The jury's unclean hands finding would certainly provide grounds for "enhanced damages."

12

1   verdict, defendants engaged in illegal, unfair, and fraudulent business practices.

2       **B.**    **UCL Violations**

3          Plaintiffs contend that judgment in their favor is warranted on their UCL claim under the

4   illegal prong: the jury found that the defendants violated TILA, RESPA, and the Rosenthal Act,

5   and Bruetsch and Capital Benefit breached their fiduciary duties.  Plaintiffs also seek findings of

6   fact and conclusions of law that defendants engaged in "fraudulent acts" under the UCL, given

7   that defendants' conduct was likely to deceive reasonable consumers/members of the public.

8   Finally, plaintiffs seek findings of fact and conclusions of law that defendants engaged in a

9   number of "unfair" actions in violation of the UCL.  Dkt. No. 146.  Many of plaintiffs' suggested

10   findings of fact and conclusions of law under the UCL are overbroad, unnecessary, or unsupported

11   by citations to undisputed facts in the record or evidence admitted at trial.

12          Defendants oppose plaintiffs' proposed facts and conclusions of law in whole, suggesting

13   their own findings of facts and conclusions of law that are contrary to the jury's verdict.  Dkt. No.

14   150.  Their position rests exclusively on the arguments rejected earlier in this Order, that equitable

15   estoppel precludes any relief for plaintiffs and that plaintiffs failed to support their claims at trial.

16   Defendants failed to address whether any of the plaintiffs' proposed facts and conclusions of law

17   are not supported by the evidence at trial and the jury's verdict or are unnecessary.

18          I do not adopt plaintiffs' proposals wholesale.  Instead, based on the evidence admitted at

19   trial and as supported by the verdict, I adopt the following findings of fact and conclusions of law

20   in support of the UCL.

21          **1.**    **Findings of Fact**

22       1.    The parties' joint pretrial statement of undisputed facts is incorporated.  *See* Dkt.

23   No. 53, at 6-7.

24       2.    Bruetsch and Capital Benefit failed to prove that the loan was exempt from TILA

25   as a "business purpose" loan.  In brokering and originating the loan, they failed to clear up the

26   ambiguity created by the handwritten comments in the Loan Application disclosing consumer

27   purposes for the loan and failed to perform their obligations under TILA to determine the actual

28   purpose for the loan.  Bruetsch's sworn trial testimony to the contrary—specifically that he had a

13

telephone conversation about the loan terms and purposes with Rhonda Drakeford—was rejected by the jury.  *See* Trial Exhibits 22-25, 55-57 (telephone records).  The telephone records introduced by plaintiffs supported Rhonda Drakeford's testimony that she never had a telephone conversation with Bruetsch, and Bruetsch failed to introduce additional telephone records to which he had access to attempt to rebut her testimony.  *See also* Dkt. No. 53, at 8-9 (Pretrial Conf. Stmt.).

3.      With respect to the origination of the loan, Bruetsch and Capital Benefit were the agents of the Lender Defendants (Robert V. Williams, Waltraud M. Williams, and Richard Westin), who are charged with their agents' knowledge (and/or lack thereof) regarding the actual loan purpose.  *See* Dkt. No. 128, at 26 (Jury Instructions).  The Lender Defendants themselves had no basis for knowing the purposes of the loan except for what Bruetsch communicated to them.

4.      Fred Mayer was not the plaintiffs' agent.  *See* Dkt. No. 52, at 2 (Order on Mot. for Partial Summ. J.); Dkt. No. 64, ¶¶ A, D (Order on Mot. in Lim.).  The jury rejected the claim by Bruetsch that Mayer informed him that the plaintiffs' loan was primarily for business purposes.

5.      Bruetsch and Capital Benefit were "mortgage broker[s] providing mortgage brokerage services" to the plaintiffs within the meaning of Cal. Civ. Code § 2923.1.  *See also* Dkt. No. 128, at 21 (Jury Instructions).

6.      The loan's terms included, as relevant here, (a) an 11.5% base interest rate that was negotiated between Mr. Bruetsch and Mr. Mayer without plaintiffs' knowledge or participation, (b) a "late fee" provision that charged the plaintiffs an additional 10% of any payment not received by the 10th day after the due date, and (c) a "default interest" provisions that increased the interest rate to 19.5% with respect any payment not received within 30 days of the due date.[6]

7.      The Court does not resolve whether the default interest provisions were impermissible liquidated damages under California law.  *See* Cal. Civ. Code § 1671.  However, because the terms of Capital Benefit's servicing agreement with the Lender Defendants entitled

---

[6] The loan's monthly payments were due on the first day of the month and considered late if received after the 10th day of the month.  The default interest then applied if the payment was not received within 30 days of the first day of the month.

1    Capital Benefit to 100% of any default interest charged to the plaintiffs and 50% of any late fees

2    charged to plaintiffs, provisions that are not typically included in consumer purpose loans, those

3    provisions were primarily for the benefit of Bruetsch and Capital Benefit. *See also* Trial Exhibits

4    34-35 (Servicing Agreements).

5              8.       Based on the jury's findings and trial testimony, I find that Bruetsch and Capital

6    Benefit never communicated with the plaintiffs prior to originating the loan to confirm the content

7    of the loan application that they prepared for plaintiffs, to explain the loan terms to the plaintiffs

8    prior to the origination of the loan, to disclose their role as mortgage broker to plaintiffs in the

9    transaction, to disclose their role as agents and fiduciaries of the plaintiffs in the transaction, or to

10   disclose or explained any of the conflicts of interest implicit in the transaction, including Capital

11   Benefit's beneficial interest in the default interest provisions of the loan.

12             9.       The brokering, origination, and servicing of the loan by Bruetsch and Capital

13   Benefit were business acts and practices within the meaning of the UCL.

14             10.      The making of the loan was a business act or practice by each of the Lender

15   Defendants within the meaning of the UCL.

16                              **2.            Proposed Findings of Law**

17             11.      The making of the loan violated TILA because it was a "High-Cost Mortgage"

18   under TILA (15 U.S.C. § 1602(bb)) that included contract terms prohibited for such mortgages (15

19   U.S.C. § 1639), including "an interest rate applicable after default that is higher than the interest

20   rate that applies before default" (*id*. at § 1639(d)) and a late fee "in an amount in excess of 4

21   percent of the amount of the payment past due … before the end of the 15-day period beginning

22   on the date the payment is due" (*id*. at § 1639(k)).[7]

23             12.      The making of the loan also violated TILA because none of the required TILA

24   disclosures were made to the plaintiffs. *See id*.; 15 U.S.C. § 1639(a)&(b).

25

26   _____

27   [7] Defendants stipulated pretrial "that if the loan is determined to be covered by TILA, then it
     would be considered a 'high-cost mortgage' (a/k/a HOEPA mortgage) under TILA with terms not
     allowed for a HOEPA mortgage, and that no TILA disclosures were given, such that it is subject
28   to TILA rescission," including the "rote calculation" applicable to implementation of that
     rescission by the Court in equity after the trial.  See Dkt. No. 53, at 7-8 (Pretrial Conf. Stmt.).

13.     The making of the loan violated California's "mortgage broker's license law" because Bruetsch and Capital Benefit breached their fiduciary duties to the plaintiffs and the law provides that "any violation of the broker's fiduciary duties shall be a violation of the mortgage broker's license law."  Cal. Civ. Code § 2923.1.

14.     In making the loan, defendants committed "unlawful" business acts and practices within the meaning of the UCL based on the predicate violations of TILA and state laws identified above.  *See* Cal. Bus. & Prof. Code § 17200.

15.     In servicing the loan, including instituting non-judicial foreclosure proceedings against the property, Bruetsch and Capital Benefit committed further "unlawful" business acts and practices within the meaning of the UCL based on the predicate violations of RESPA and the Rosenthal Act identified by the jury verdict.  *See* Dkt. No. 133 (Jury Verdict).

16.     In making the loan, Bruetsch and Capital Benefit committed "fraudulent" business acts and practices within the meaning of the UCL because they (a) failed to disclose and explain the conflicts of interest arising from the default interest and other material terms of the loan and (b) had a fiduciary duty to affirmatively make such disclosures.  *See* Cal. Civ. Code § 2923.1. These acts and practices were "likely to deceive a reasonable consumer."  *Clemens v. DaimlerChrysler* Corp., 534 F.3d 1017, 1025 (2008).

17.     In making the loan, Bruetsch and Capital Benefit committed "unfair" business acts and practices within the meaning of the UCL because their conduct was "immoral, unethical, oppressive, unscrupulous [and/or] substantially injurious to consumers."  *In re Anthem, Inc. Data Breach Litig*., 162 F. Supp. 3d 953, 990 (2016); *see also* Dkt. No. 133, at 12 (Verdict on Unclean Hands).

18.     Plaintiffs "suffered injury in fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.  Plaintiffs suffered injury in fact and lost money or property in the form of the costs, fees, and interest they paid in connection with the loan, and being forced to engage in affirmative litigation to save their home from being seized from them through non-judicial foreclosure after defendants rejected their TILA rescission notice on the grounds that the loan had been obtained for business purposes.  *See* Trial Exhibits 16-17 (TILA

rescission notice and response).

19.     Plaintiffs have no adequate remedy at law for the UCL violations, which threaten plaintiffs' ownership of their home.  *See Fonteno v. Wells Fargo Bank, N.A*., 228 Cal. App. 4th 1358, 1380 (2014).

### C.     Remedy Under UCL

Plaintiffs have suffered injury in fact and lost money or property as a result of the UCL violations, specifically: (i) the costs, fees, and interest paid in connection with the loan and (ii) being forced to engage in affirmative litigation when defendants would not rescind the loan under TILA.  Notice and Mot. in Support of Plaintiffs' (1) Proposed Findings and Conclusions on UCL Claims and (2) Proposed Final J. ("Pls. Mot.") at 4-5.  However, the only remedy sought by plaintiffs under the UCL is one "that parallels the equitable rescission remedy that it will also apply under TILA."  Pls. Mot. at 9.  Plaintiffs' request to enter a judgment of rescission is GRANTED as a result of the TILA violation as well as the violations of the UCL identified above.

## III.   JUDGMENT

JUDGMENT IS HEREBY ENTERED in favor of plaintiffs and counter-defendants REGINALD and RHONDA DRAKEFORD ("Plaintiffs") and against defendants and counter-claimants CAPITAL BENEFIT, INC., MARCEL BRUETSCH, ROBERT V. and WALTRAUD M. WILLIAMS, individually, and as Trustees of the Williams Family Trust, and RICHARD WESTIN (collectively "Defendants") as follows:

1.     **Money judgment**.  A money judgment in favor of Plaintiffs and against Defendants is HEREBY ENTERED in the total amount of $18,691.94, divisible as follows:

a. All Defendants are jointly and severally liable for Truth in Lending Act (TILA) statutory damages of $2,800.

b. Defendants Marcel Bruetsch and Capital Benefit Inc. are jointly and severally liable for:

i. Rosenthal Fair Debt Collections Practices Act (Rosenthal Act) statutory damages of $700.

ii. Real Estate Settlement Procedures Act (RESPA) statutory damages of

United States District Court
Northern District of California

United States District Court
Northern District of California

1              $1,400.

2              iii. Compensatory damages for breach of fiduciary duty of $13,791.94.

3      2.     **Rescission**.  Pursuant to TILA and California's Unfair Competition Law (UCL),

4 the subject loan against the real property known as 11105 Sun Valley Drive, Oakland, Alameda

5 County, California 94605 (the "property") is SUBJECT TO RESCISSION:

6              a. The preliminary injunction issued in favor of Plaintiffs against Defendants on

7              August 13, 2020 (Dkt. No. 26) CONTINUES IN EFFECT until rescission is

8              completed (as outlined below) or until the Court otherwise orders the injunction

9              dissolved;[8]

10              b. Defendants shall issue to Plaintiffs' new lender a "payoff demand" in the amount

11              of $234,713.09 upon request.

12              c. Subject to that payoff demand, Defendants shall provide the escrow agent for the

13              new lender's loan with a full reconveyance of the existing loan which full

14              reconveyance shall only be recorded once the rescission amount is wired to the

15              existing loan beneficiaries care of their loan servicer Capital Benefit, Inc.

16              d. The parties shall cooperate with the new lender and/or its escrow agent to

17              effectuate the payoff of the existing loan in the amount of $234,713.09 through the

18              new loan transaction in the new lender's customary manner pursuant to joint

19              escrow instructions.

20              e. The Court shall retain jurisdiction over the rescission process as may be

21              necessary to effectuate the intent and purposes of this rescission.

22      3.     **Counterclaims**.  Defendants shall take nothing by their counterclaims.

23      4.     **Attorney fees and costs**.  Plaintiffs are the prevailing party.  They shall file a

24 noticed motion for attorney fees, costs, and any other expenses claimed to be recoverable in this

25 action.  The motion shall be filed within three weeks of the date of entry of this judgment.  Absent

26 stipulation of the parties, plaintiff shall comply with the normal timing and filing requirements for

27

28     [8] The form of the rescission remedy is adopted from the parties' stipulated Order to Effectuate Rescission Judgment.  Dkt. No. 153.

their bill of costs.  *See* Civil Local Rule 54.

## CONCLUSION

A separate judgment will be entered in accordance with the foregoing.

**IT IS SO ORDERED.**

Dated: July 8, 2022



William H. Orrick
United States District Judge